**State v. Hamilton**
*[Cite as 6 AOA 91]*

*Case No. 474*
*Adams County, (4th)*
*Decided August 31, 1990*

*Randall M. Dana and Mr. George H. Lancaster, Jr., Columbus, Ohio, for Appellant.* [1]

*Robert D. Castor, Assistant Prosecuting Attorney, West Union, Ohio, for Appellee.*

STEPHENSON, J.

This is an appeal from a judgment entered by the Adams County Court of Common Pleas upon a jury verdict finding Curtis T. Hamilton, defendant below and appellant herein, guilty of breaking and entering, in violation of R.C. 2911.13(A), and attempted theft, in violation of R.C. 2923.02(A). Appellant assigns the following errors:

*ASSIGNMENT OF ERROR I*
"APPELLANT HAMILTON WAS DEPRIVED OF THE RIGHT TO EFFECTIVE ASSIS-TANCE OF COUNSEL IN VIOLATION OF ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS A RESULT OF COUNSEL'S ACTIVE REPRE-SENTATION OF CONFLICTING INTERESTS WHICH ADVERSELY AFFECTED COUNSEL'S PERFORMANCE."

*ASSIGNMENT OF ERROR II*
"APPELLANT HAMILTON WAS DEPRIVED
OF DUE PROCESS OF LAW, THE RIGHT TO
THE EFFECTIVE ASSISTANCE OF COUN-
SEL, AND THE RIGHT TO PRESENT
EVIDENCE IN HIS DEFENSE IN VIOLA-
TION OF ARTICLE I, SECTION 16 AND
ARTICLE I, SECTION 10 OF THE OHIO
CONSTITUTION AND THE SIXTH AND
FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION WHEN
DEFENSE COUNSEL REFUSED TO PRES-
ENT EVIDENCE ON BEHALF OF APPEL-
LANT HAMILTON. ALTHOUGH COUNSEL
BELIEVED SUCH EVIDENCE TO BE
FALSE, COUNSEL SHOULD HAVE BEEN
REQUIRED TO GIVE A SPECIFIC FACTUAL
BASIS FOR HIS BELIEF."

*ASSIGNMENT OF ERROR III*
"THE PROSECUTION FAILED TO INTRO-
DUCE SUFFICIENT EVIDENCE TO PROVE
THAT APPELLANT HAMILTON COMMIT-
TED THE OFFENSE OF ATTEMPTED
THEFT THEREBY FAILING TO CARRY ITS
BURDEN OF PROOF AS TO ALL ESSEN-
TIAL ELEMENTS OF THE CRIME OF
ATTEMPTED THEFT BEYOND A REASON-
ABLE DOUBT IN VIOLATION OF OHIO
REVISED CODE SECTION 2901.05(A), ARTI-
CLE I, SECTION 16 OF THE OHIO CONSTI-
TUTION AND THE FOURTEENTH AMEND-
MENT TO THE UNITED STATES
CONSTITUTION."

*ASSIGNMENT OF ERROR IV*
"THE TRIAL COURT ERRED IN CON-
VICTING AND SENTENCING APPELLANT
HAMILTON ON BOTH BREAKING AND
ENTERING AND ATTEMPTED THEFT IN
VIOLATION OF THE PROHIBITIONS
AGAINST DOUBLE JEOPARDY CON-
TAINED IN ARTICLE I, SECTION 10 OF
THE OHIO CONSTITUTION AND THE
FIFTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION
AND OHIO REVISED CODE
SECTION 2941.25."

*ASSIGNMENT OF ERROR V*
"THE TRIAL COURT ERRED IN OVER-
RULING APPELLANT HAMILTON'S MO-
TION TO SUPPRESS EVIDENCE OBTAINED
AS A RESULT OF AN ILLEGAL ARREST,
SEARCH AND SEIZURE THEREBY DEPRIV-
ING APPELLANT OF THE RIGHT TO BE
FREE FROM UNREASONABLE SEARCHES
AND SEIZURES IN VIOLATION OF ARTI-
CLE I, SECTION 14 OF THE OHIO CONSTI-
TUTION AND THE FOURTH AND FOUR-
TEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION."

*ASSIGNMENT OF ERROR VI*
"THE TRIAL COURT ERRED IN ADMIT-
TING EVIDENCE RELATING TO A FIGHT
THAT OCCURRED BETWEEN APPELLANT
HAMILTON AND HIS WIFE THEREBY DE-
PRIVING APPELLANT OF DUE PROCESS
OF LAW IN VIOLATION OF ARTICLE I,
SECTION 16 OF THE OHIO CONSTITUTION
AND THE FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION."

In the early morning hours of December 6, 1986, Captain Bob's Carryout, located on U.S. Route 52, in Adams County, was broken into. One William D. Spires, who lived near the carryout, was awakened by a loud car. He looked out a window and observed a light colored car parked in front of the carryout. Spires woke up his wife, Linda Fields, to watch the car while he went to start his own car to go investigate. Fields believed the car in front of the carryout to be a yellow Dodge, similar to a Dodge Dart she had owned previously. Fifteen minutes after she began watching, Fields watched the car leave the carryout and head east on U.S. Route 52 towards Portsmouth.

Spires called the Adams County Sheriff's Department at 4:43 A.M. and further called one George Robert Gaffin, the owner of Captain Bob's. When Gaffin arrived at the carryout, he found the door pried open, the lights on, and merchandise disturbed--e.g. beer sitting on the counter and cigarettes on the floor. Gaff in as-serted that merchandise would not ordinarily be left in such condition when the carryout closed. Gaff in also found a pry bar lying inside the screen door to the carryout.

Deputy Steve Thatcher of the Adams County Sheriff's Department went to Captain Bob's in response to the call made by Spires. Thatcher observed that the pry bar had a shoe print on it and secured it for testing by the Bureau of Crimi-nal Investigation (BCI). Spires arrived at the scene and described the car to Thatcher. Thatch-er then radioed the dispatcher and told her to alert Scioto County about the car.

Officer Bud Deaton of the Portsmouth Police Department, having been advised of the breaking at Captain Bob's, observed appellant's car, a yellow 1974 Dodge Dart Swinger, come into Portsmouth heading east on U.S. Route 52. Deaton followed appellant's car, which was being driven by appellant's wife, Barbara Hamilton, and turned on his pursuit lights. Although there is some question as to how far appellant's wife drove the car after Deaton turned on his lights, she eventually stopped in their (the Hamilton's) driveway on Kinney's Lane in Portsmouth. Appellant was frisked and placed in the back of the cruiser of Sergeant Bernard Potts, a member of the Portsmouth Police Department, who had also arrived at the scene. This occurred between 5:30 A.M. and 6:00 A.M. on December 6, 1986. The Adams County Sheriff's Department was then notified.

Potts then transported appellant to the Scioto County jail to wait the arrival of a deputy from the Adams County Sheriff's Department. Potts testified that he told the jailer to make sure to hang on to appellant's shoes because they may be evidence--i.e., to compare to the shoe print left on the pry bar. The jailer seized appellant's shoes at that time. Lieutenant Doug Conley, of the Scioto County Sheriff's Department, confirmed Potts' testimony. Appellant asserted that his shoes were seized at his residence.

Appellant was subsequently indicted on two counts, to wit breaking and entering, a violation of R.C. 2911.13(A) and attempted theft, a violation of R.C. 2923.02(A). Appellant filed a motion to suppress on March 2, 1987, wherein he asserted that the police illegally seized, *inter alia,* his shoes. A suppression hearing was held on April 24, 1987, but because appellant refused to answer certain questions, the hearing was continued until he agreed to answer the questions. The hearing was subsequently concluded on July 9, 1987. The court denied appellant's motion on July 10, 1987.

The case went to trial on March 11, 1988. After a three day trial, the jury returned a guilty verdict on both counts.

Before we address appellant's assignments of error, we must first determine whether or not appellant's appeal is moot. On September 29, 1989, appellee filed a motion to dismiss the appeal on the ground that issues pertinent to the appeal were moot. The issue of mootness in the criminal case context was discussed in *State v. Johnson* (1988), 43 Ohio App. 3d 1, as follows

"The law regarding moot criminal cases is not in dispute. *State v. Wilson* (1975), 41 Ohio St. 2d 236, 70 O.O. 2d 431, 325 N.E. 2d 236, certiorari denied *sub nom. Wilson v. Ohio* (1975), 423 U.S. 936, hold that after a defendant has fully satisfied his penalty and there is no 'evidence' that the defendant will suffer any collateral disability or loss of civil rights as a result of the conviction, the appeal is moot and must be dismissed. The majority of the Supreme Court rejected the position of the dissent which would have allowed an appeal due to collateral 'disgrace and legal discredit of a conviction.' *State v. Wilson,* supra, at 239, 70 O.O. 2d at 433, 325 N.E. 2d at 238-239 (Celebrezze, J., dissenting)."

Appellee asserts that since the entry of conviction, appellant has served the entirety of his sentence and was released from prison before the case was argued before this court. Appellee further argues that appellant's conviction in the case *sub judice* will subject him to no further collateral disabilities than he already suffers from prior felony convictions.

Appellant argues, on the other hand, that he will indeed suffer further collateral disabilities from the conviction in the case at bar. Appellant also argues that appellee presented evidence to this court which cannot be considered because it was not part of the record of the court below--i.e., evidence that appellant had fully served his sentence and had been released. See *State v. Ishmail* (1978), 54 Ohio St. 2d 402 (reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter).

We find *Ishmail, supra,* to be clearly distinguishable from the case at bar. On this issue, the court in *Johnson, supra* at 3, n. 1, stated the following:

"While it is certainly true that *State v. Ishmail,* supra, prohibits a reviewing court from adding matter to the record from the trial court and then deciding the appeal on the basis of the new matter, nothing in that case refers to the situation where an appellate court is deciding an issue of mootness. That issue goes to the duty and authority of the appellate court to hear the cause, which is distinct from deciding a cause on the merits as was done in *State v. Ishmail,* supra."

Appellant attempts to distinguish the above language by arguing that in *Johnson* the court allowed the defendant to produce new evidence concerning collateral disabilities whereas the

case *sub judice* involves the state introducing new evidence. We find such a distinction to be illusory.

The paramount issue is whether the new evidence involves issues pertinent to the authority of the appellate-court to hear the cause or whether it involves issues pertinent to the merits of the appeal. If it is the former, new evidence may be considered by the court, whether it is produced by the state as evidence that the defendant has served his sentence or paid his fine or produced by the defendant as evidence that collateral disabilities exist. However, if the new evidence involves the merits of the appeal, it may not be considered by an appellate court. Thus, this court may consider the evidence that appellant has served the entirety of his jail sentence and has been released.

Appellant also asserts several of what he considers to be collateral disabilities. First, he argues that the convictions in the case *sub judice* could be used to enhance the sentence of any future conviction. We note that appellant has been convicted of numerous other crimes which could be used for enhancement purposes, to wit "malicious entering, possession of criminal tools, and breaking and entering in 1973; aggravated trafficking and forgery in 1977; receiving stolen property in 1981; and receiving stolen property in 1986." Since the convictions in the case *sub judice* would not lead to any further enhancement than would occur based upon appellant's prior convictions, the convictions in the case at bar do not place a collateral disability upon appellant in the form of enhanced jail sentences.

Appellant next argues that his present convictions could be used to prove that he is a repeat offender and thus not eligible for probation. See R.C. 2951.02(F)(2) and R.C. 2929.01(A). Appellant specifically cites subsections (3), (5), and (6) of R.C. 2929.01(A), which defines "repeat offender." Such section reads, in pertinent part, as follows:

"'Repeat offender' means a person who has a history of persistent criminal activity, and whose character and condition reveal a substantial risk that he will commit another offense. It is prima-facie evidence that a person is a repeat offender if any of the following apply:

"***

"(3) Having been convicted of one or more theft offenses as defined in section 2913.01 of the Revised Code, and having been imprisoned pursuant to sentence for any such offense, he commits a subsequent theft offense;

"***

"(5) Having been convicted of two or more felonies, and having been imprisoned pursuant to sentence for any such offense, he commits a subsequent offense;

"(6) Having been convicted of three or more offenses of any type or degree other than traffic offenses, alcoholic intoxication offenses, or minor misdemeanors, and having been imprisoned pursuant to sentence for any such offense, he commits a subsequent offense."

We again hold that appellant's convictions in question will place no disability upon appellant which does not already exist. With respect to the first subsection, i.e., R.C. 2929.01(A)(3), we note that receiving stolen property in violation of R.C. 2913.51 is a theft offense as defined by R.C. 2913.01. Appellant was convicted of receiving stolen property in 1981 and served a jail term therefor. Appellant was then convicted of another theft offense in 1986, to wit, breaking and entering. Thus, appellant has been convicted of at least one theft offense wherein he was imprisoned and was subsequently convicted of another theft offense. Hence, regardless of the convictions *sub judice*, appellant would be deemed a repeat offender under R.C. 2929.01(A)(3).

Appellant next cites R.C. 2929.01(A)(5). Notwithstanding the present convictions, appellant has been convicted of at least two felonies--e.g., the 1973 breaking and entering offense and the 1981 receiving stolen property offense--and since he was imprisoned for the 1981 receiving stolen property offense, appellant fit within the definition of R.C. 2929.01(A)(5) even before the convictions in the case at bar.

Finally, under R.C. 2929.01(A)(6), we note that appellant has been, prior to the case *sub judice*, convicted of three offenses other than traffic offenses, alcohol intoxication offenses, and minor misdemeanors--e.g., the 1973 breaking and entering offense, the 1981 receiving stolen property offense, and the 1986 receiving stolen property offense. Accordingly, since appellant was considered a repeat offender under at least three subsections of R.C. 2929.01(A) before he was convicted of the offenses in the case at bar, the present convictions lead to no new collateral disabilities with respect to the repeat offender statute.

Appellant's next alleged collateral disability concerns the victims of crime fund, the procedures for which are codified in R.C. 2743.51 et seq. Appellant asserts that he has recently been the victim of a crime of violence, and, because of

the convictions in the case *sub judice,* he was prohibited from receiving reparations through the fund because of the limitations on claims set forth in R.C. 2743.60(E), which reads as follows:

"Neither a single commissioner nor a panel of commissioners shall make an award to a claimant who is a victim, or who claims an award of reparations through a victim, who, within ten years prior to the criminally injurious conduct that gave rise to the claim, was convicted of a felony or who is proved by a preponderance of the evidence presented to the commissioner or the panel to have engaged, within ten years prior to the criminally injurious conduct that gave rise to the claim, in conduct that, if proven by proof beyond a reasonable doubt, would constitute a felony under the laws of this state, another state or the United States."

We find appellant's claim to be without merit for two reasons. First, even if the convictions were overturned, appellant would still not be assured of recovering reparations because evidence could be presented to the commissioners that appellant engaged in the activities which gave rise to the present litigation, and, if it is proved by a preponderance of the evidence that appellant engaged in such activities, he would be barred from recovery. Second, and more important, appellant is barred from recovery if he was convicted of a felony within ten years of the injury. As previously noted, appellant was convicted of a felony in 1981, therefore, he would be barred from recovery regardless of whether he was convicted of the crimes in the case *sub judice.*

We will not speculate that appellant may be a victim of a violent crime sometime in the future and be barred from recovery only because of the convictions in the case at bar. "A collateral disability must be a substantial, individualized impairment, and a purely hypothetical statement about what might occur in the future is not sufficient to give viability to an otherwise moot appeal. "*Johnson, supra* at 3.

Appellant's final argument that there exists collateral disabilities from the convictions *sub judice* involves Evid. R. 609 which states, in pertinent part, the following:

"(A) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance.

"(B) TIME LIMIT. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, or shock probation, or parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

Appellant argues that the convictions in the case *sub judice* could be used to impeach his testimony at trial if he ever testifies within the next ten years. We do not believe that such a possibility constitutes a collateral disability in Ohio. In *Johnson, supra, State v. Banes* (November 19, 1986), Hamilton App. No. C-860084, unreported, and *State v. Veddern* (June 30, 1982), Hamilton App. No. C-810586, unreported, the Court of Appeals for Hamilton County held that a felony conviction does not in and of itself constitute a collateral disability. Since a felony conviction carries with it possible punishment in excess of one year, to make such a determination, the court implicitly held that the possibility of impeachment is not a collateral possibility. See Evid. R. 609(A), *supra.*

Further, in *State v. Berndt* (1987), 29 Ohio St. 3d 3, the Supreme Court held that in the case of a drunk driving conviction, the possibility of an enhanced penalty for a future drunk driving conviction did not constitute a collateral disability. Manifestly, the possibility of impeachment, which does not affect any specific rights or freedoms, is not as substantial a stake in the judgment of conviction as is a potentially longer jail term. Accordingly, there are no collateral disabilities affecting appellant.

Appellant also argues that rendering his appeal moot would deny him his right to appeal. We disagree. The Ohio Supreme Court has stated, "[E]vidence must be offered from which an

inference can be drawn that he suffers some collateral disability apart from the sentence (in which event the defendant holds a sufficient stake in the judgment to raise a challenge thereto), in order for the defendant to have a right of appeal." *State v. Wilson*, supra at 238. Accordingly, rendering an appeal moot does not deny a person of his right to appeal.

Appellant finally argues that he was denied equal protection under the laws in violation of the fourteenth Amendment of the United States Constitution. Appellant's argument reads as follows

"Appellant Hamilton repeatedly sought to be released on bond prior to trial. However, Appellant could not 'post' the bond set by the court and therefore remained incarcerated pending trial....If Appellant had the means to post bond, as a wealthy defendant could have done, he surely would have do so. In that case, this appeal would not have been moot. Thus, Appellant is deprived of his right to appeal merely because of his financial status."

We note that poverty is not a suspect classification. See *Harris v. McRae* (1980), 448 U.S. 297; *United States v. Kerr* (W.D. Penn 1988), 686 F. Supp. 1174. Therefore, any law is subject to a rational basis test. Here, with the increasing load on court dockets, courts have a strong interest in dismissing cases which are moot. Therefore, the mere fact that indigent defendants may have more cases dismissed on the grounds of mootness than do wealthy defendants does not render the mootness doctrine unconstitutional. Appellant's argument does, however, raise another question. In *State v. Benson* (1986), 29 Ohio App. 3d 109, the Court of Appeals for Franklin County held that where a defendant serves the entirety of his sentence before trial because he was unable to post bond, an appeal cannot be precluded on the grounds of mootness. While the case at bar is somewhat factually distinguishable in that the entirety of appellant's sentence was not served before trial, he did finish serving his sentence before this court heard the case because we denied appellant's motion for bond. Hence, if this court had granted appellant bond, he would not have served his sentence in its entirety before this court heard his case, and the cause would not be moot. Accordingly, in the interests of justice, appellee's motion is overruled, and we will decide appellants appeal on the merits.

We will address appellant's first and second assignments of error jointly. In his first assignment of error, appellant asserts that he was denied his constitutional right to effective counsel as a result of appellant's trial counsel's active representation of conflicting interests. In his second assignment of error appellant asserts that he was denied effective assistance of counsel as a result of defense counsel's refusal to give specific factual reasons for his belief that two witnesses would perjure themselves.

During the presentation of appellant's defense, his counsel made the following statement out of the presence of the jury:

"Mr. GRENNAN: Yes your Honor. If it please the Court. In the investigation of this case and discussing it with my client. He had given me the information of two witnesses that he would like to have called who are incarcerated in penitentiaries or reformatory institutions. One Dorothea Lay and one Howard Henderson. I issued subpoenas for both of them with the intent of having them testify. I placed into the record for purposes of identification, a letter which is drawn by, uh, Mrs. Dorothea Lay in that case. Yesterday, I had an opportunity to talk to Ms. Lay. This afternoon at lunchtime I had an opportunity to speak to Mr. Henderson. I feel in my judgment as attorney for the defendant in this case, although he disagrees with me, that those witnesses would not beneficial to his case. In fact, they may be perjuring themselves, and I ethically cannot, as an officer of the court, allow the suborn perjury and therefore will not be calling them and will withdraw Defendant's Exhibit F in my judgment as counsel for the defendant. Uh, I want to make this of record so that the court is fully aware and there is a record of why I have chosen in the representation of Mr. Hamilton not to do this, primarily because I know he disagrees with me on this."

It was also disclosed that appellant's attorney had previously represented Lay although he was no longer representing her. Appellant asserts that his trial counsel had a conflict of interest between counsel's duty to appellant and counsel's duty to Lay. Further, appellant's attorney did not disclose why he believed these two witnesses would perjure themselves.

We do not believe that a conflict exists on the case at bar; however, there may be a problem with counsel's failure to disclose the reasons why he believed perjury would occur. *See e.g. United States. ex rel. Wilcox. v. Johnson* (C.A. 3 1977), 555 F. 2d 115. Nevertheless, we need not address these constitutional issues because we hold that thee was an alternative basis why appellant's

trial counsel refused to call Henderson and Lay to testify.

Appellant's counsel interviewed both persons and after the interviews determined in his judgment that "those witnesses would not be beneficial to (appellant's] case." Thus, whether or not counsel believed the witness would perjure themselves, he would not have called them if they would not aid in appellant's defense." Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." *State v. Hunt* (1984), 20 Ohio App. 3d 310; *O'Mally v. United States* (CA 6 1961), 285 F. 2d 733. We will not find ineffective assistance of counsel where the claimed error was in a tactical decision. *State v. Clayton* (1980), 62 Ohio St. 2d 45; *State v. Holsinger* (June 28, 1989), Highland Co. App. No. 682, unreported. Accordingly, appellants first and second assignments of error are overruled.

In his third assignment of error, appellant asserts that the record was not sufficient evidence presented from which a rational jury could have found that the state proved beyond a reasonable doubt every element of attempted theft. Essentially, appellant asserts two separate arguments in support of this assignment of error.

First appellant argues that there was no evidence that any merchandise in Captain Bob's was moved except through the testimony of Bob Gaff in who owned the store. Gaff in had not worked the night before and did not know for sure that the employees who had worked the prior evening had not left the merchandise in the position he found it. Appellant asserts that, therefore, no evidence existed from which the jury could conclude that appellant attempted to steal items from the store.

We disagree. Gaff in testified that ordinarily merchandise would not be left in such a condition. This testimony was considered by the jury along with the testimony of two other witnesses who stated that they saw someone breaking into Captain Bob's. Further, the door of the store was pried open and the pry bar was found in the doorway with a print from appellant's shoe on it. It was reasonable for the jury to conclude from this evidence that the person who had broken into Captain Bob's–i.e. appellant–had also moved the merchandise with the intent to commit a theft offense.

Appellant's second argument with respect to his third assignment of error is that in order for the jury to find him guilty of attempted theft, it was necessary for it to impermissibly stack inferences upon inferences. "An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury." *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 3d 329, at paragraph one of the syllabus. Again, we disagree with appellant and hold that it was not necessary for the jury to stack inferences upon inferences to find that appellant committed attempted theft.

The facts proved that appellant had broken into the carryout–i.e., his shoe print was found on a crow bar inside. Further the evidence showed that merchandise had been moved and, from Gaffin's testimony, the jury would conclude that it was not moved until after the store closed. From that evidence, the jury could infer that appellant intended to commit a theft offense when he broke in and infer that appellant had moved the merchandise to consummate that theft offense. These are parallel inferences in which the jury may indulge. *See Hurt, supra; State v. Ebright* (1983), 11 Ohio App. 3d 97. Accordingly, there was sufficient evidence from which the jury could appropriately find appellant guilty of attempted theft.[2] Appellant's third assignment of error is overruled.

In his fourth assignment of error, appellant asserts that the court erred in entering a judgment of conviction and sentence on both breaking and entering and attempted theft. Appellant argues that the court violated the double jeopardy clauses of both the Ohio and United States Constitutions as well as R.C. 2941.25(A) because the two offenses were allied offenses of similar input.

We find appellant's contention to be without merit. The United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299 set forth the following basic tenet concerning whether or not two offenses are sufficiently distinguishable to multiple punishments:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

Ohio enacted R.C. 2941.25 which is to be used to determine whether or not two offenses are allied offenses of similar import. That statute reads as follows:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

The Ohio Supreme Court has had the opportunity to address R.C. 2941.25 on several occasions. In *State v. Mitchell* (1985), 18 Ohio St. 3d 152, the court set forth the following two prong analysis to use in determining whether or not two offenses are allied:

"In applying this statute, the courts have employed a two-step analysis described in *State v. Logan* (1979), 60 Ohio St. 2d 126 [397 N.E. 2d 1345] [14 O.O. 3d 373]. The first step requires a comparison of the elements with which the defendant is charged. Allied offenses of similar import are those offenses whose elements correspond to such a degree that the commission of one offense will result in the commission of the other. *Id.* at 128 [397 N.E. 2d 1345]. An illustration of this principle is rape, as defined by R.C. 2907.02(A)(1), and kidnapping, as defined by R.C. 2905.01(A) (4). A comparison of the elements of these two offenses reveals such a singularity of purpose and conduct that kidnapping may be said to be implicit within every forcible rape. *State v. Price* (1979), 60 Ohio St. 2d 136 [398 N.E. 2d 772] [14 O.O. 3d 379]; *State v. Logan, supra*; *State v. Donald* (1979), 57 Ohio St. 2d 73 [386 N.E. 2d 1341] [11 O.O. 3d 242].

"In the event that the court finds the offenses being compared are allied offenses of similar import, it must proceed to the second step of analysis which is indicated under R.C. 2941.25(B). This level of inquiry involves a review of the defendant's conduct for a determination as to whether the offenses were committed separately or with a separate animus as to each. If the offenses were so committed, the defendant may be convicted of them all."

The Supreme Court in *State v. Talley* (1985), 18 Ohio St. 3d 152 applied the foregoing analysis to a case where in the defendant was convicted of breaking and entering, grand theft,[3] and possession of criminal tools. In determining that the three offenses were not allied offenses of similar import and, thus, the offender could be convicted and sentenced for all three offenses, the court stated the following with respect to the first prong of the *Mitchell* test, *supra:*

"The offense are such that the commission of one will not result in the commission of another. The crime of breaking and entering is complete at the time of entry into the structure. A theft is not necessary for a breaking and entering conviction--the purpose to commit any felony will suffice. Further, one can easily possess a criminal tool without committing either theft or breaking and entering."

Because the offenses in *Talley, supra* did not satisfy the requirements of the first prong of the *Mitchell* test, it was unnecessary to consider the second prong. Hence, pursuant to *Talley, supra,* grand theft (or theft) and breaking and entering are not allied offenses of similar import. See also *State v. Sardonis* (May 17, 1985), Washington Co. App. No. 83X28, unreported; *State v. Lowery* (February 22, 1984), Ross Co. App. No. 934, unreported; *State v. Donihue* (1984), 20 Ohio App. 3d 210. We likewise hold that breaking and entering and attempted theft are not allied offenses of similar import because it is not necessary to actually attempt theft during the commission of breaking and entering (all that to necessary for breaking and entering is the intent to commit a theft offense or other felony be present-i.e., no actual attempt need be made.) Further, a commission of breaking and entering clearly is not necessary to attempt a theft offense. Our conclusion is consistent with at least one other district. See *State v. Johnson* (November 19, 1987), Cuyahoga Co. App. No. 53003 and 53066, unreported (breaking and entering and attempted grand theft are not allied offenses of similar import.)

We finally note that appellant relies heavily on the Ohio Supreme Court decision of *State v. Baer* (1981), 57 Ohio St. 2d 220 in support of his proposition that he may only be convicted of one of the offenses. In *Baer*, the defendant was convicted of tampering with a coin machine and theft. The Supreme Court hold that the two offenses were allied offenses of similar import. The court in *Johnson, supra* was faced with the same argument and stated the following:

"The court's rationale in *Baer* is inapposite to the case *sub judice.* In *Baer* both offenses, tampering and theft, sought to prohibit the nonconsensual *taking of property* by whatever means. Conversely, the offense of breaking and

entering is geared toward prohibiting, in part, *trespass on land* or premises of another with the intent to commit a felony. Committee Comment to R.C. 2911.13."

We adopt this analysis as well. Accordingly, for the aforementioned reasons, appellant's fourth assignment of error is overruled.

In his fifth assignment of error, appellant asserts that the court below erred in overruling his motion to suppress evidence obtained as the result of an illegal arrest. Appellant basically asserts that the state failed to produce sufficient evidence at the suppression hearing which would give rise to probable cause for an arrest and therefore the subsequent seizure of appellant's shoes was invalid.

At trial, Officer Bud Deaton and Sergeant Bernard Potts, members of the Portsmouth Police Department, both testified that they had received a communication from the Adams County Sheriff's Department that appellant was a suspect in a breaking and entering which occurred in Adams County. Officer Deaton first encountered appellant coming into Portsmouth from the west on U.S. Route 52. He followed appellant's car and subsequently turned on his pursuit lights. Appellant's car, driven by his wife, eventually stopped in appellant's driveway. Sergeant Potts arrived on the scene at this time. Both police officers ordered appellant out of his car with their guns drawn.

Lieutenant Doug Conley of the Scioto County Sheriff's Department then arrived on the scene and assisted in placing appellant in the rear of the cruiser of Officer Potts. Appellant was transported to the Scioto County jail at which time appellant's shoes were seized as evidence.

Had all this evidence been presented at the suppression hearing, we would conclude that probable cause existed, and, therefore, the motion to suppress was properly overruled. It was proper for the law enforcement officers to rely upon a radio broadcast or bulletin from another officer. See *United States v. Hensley* (1985), 469 U.S. 221; *State v. Hill* (1981), 3 Ohio App. 3d 10. However, it is incumbent upon the state to prove there was a factual basis for the broadcast. *Hill, supra.* If there was no basis for the bulletin, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the Instigating officer to rely on other officers to make the arrest." *Whitely v. Warden* (1971), 401 U.S. 560.

In the case at bar, the state met its burden. At the suppression hearing, the officer who issued the "be on the lookout for" bulletin, Deputy Steve Thatcher of the Adams County Sheriff's Department, testified that the had investigated the breaking and entering at Captain Bob's and a witness had given him a description of appellant's car and had further told him that it had headed east on U.S. Route 52. Further, he had information that appellant's vehicle was spotted at the scene of a breaking and entering two nights before in Brown County. This is sufficient evidence from which Deputy Thatcher could have stopped appellant; thus, there was a sufficient factual basis for the bulletin. Accordingly, under such circumstances, the court could properly have overruled the motion to suppress.

However, as noted *supra,* the aforementioned analysis is based upon the assumption that all the above testimony was presented at the suppression hearing. In the case *sub judice,* neither officer Deaton nor Sergeant Potts, the two men who initially stopped appellant, testified at the suppression hearing. Hence, there was no evidence presented as to whether the arresting officers had probable cause to arrest appellant. Appellee argues that Deputy Conley assisted in the arrest of appellant and since he did testify at the suppression hearing that he had received the bulletin on the radio, there was probable cause to make the arrest.

Because we disagree with appellee's assertion that Deputy Convey participated in the arrest, we conclude that the court below erred in failing to grant the motion to suppress. The United States Supreme Court stated the following with respect to arrest in *United States v. Mendenhall* (1980), 446 U.S. 554:

"We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *** In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."[4]

It is manifest that in the case at bar that a reasonable person in appellant's position would have believed that he was not free to leave before

Deputy Conley arrived at the scene. Appellant wad Stopped by a police officer in a marked car with its pursuit lights flashing, and then ordered from his car at 5:30 in the morning by two police officers who had their guns drawn. Appellant was then searched. We further note that, notwithstanding when the arrest occurred, without the testimony of Officer Deaton, there was no evidence from which the court below could have determined that there was justification to initially stop appellant's car. Since there was no evidence proving the initial step was justified, the subsequent arrest was improper, and, therefore, the shoes seized from appellant should have been suppressed as "fruit of the poisonous tree." *See e.g. Wong Sun v. United States* (1963), 371 U.S. 471.

Accordingly, for the aforementioned reasons, we must sustain appellant's fifth assignment of error unless we can hold that the error in admitting the shoes into evidence was harmless. When an error is constitutional in magnitude--e.g., violation of appellant's fourth amendment right against unreasonable searches and seizures--to determine that it was harmless requires a finding that the error was "harmless beyond a reasonable doubt." *California v. Chapman* (1967), 386 U.S. 18, 24. In other words, "'[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Chapman, supra* at 23 (citing *Fahey v. Connecticut* (1963), 375 U.S. 85).

In the case *sub judice*, the item seized--i.e., appellant's shoes--specifically placed him at the scene of the crime since the state had an expert witness who testified that a shoe print found at Captain Bob's on the pry bar discovered in the doorway matched the print from one of appellant's shoes. We cannot conclude that the evidence against appellant was so overwhelming that the shoes and evidence derived therefrom did not contribute to appellant's conviction. We, therefore, hold that the lower court's error was not harmless beyond a reasonable doubt and sustain appellant's fifth assignment of error.

In his final assignment of error, appellant argues that the trial court erred in admitting evidence relating to a fight which occurred between appellant and his wife and, thereby, denied appellant of due process of law. Essentially, appellant contends that the evidence was of such an inflammatory nature that by hearing it the jury was prejudiced and appellant was denied a fair trial.

During the direct examination of both appellant and his wife, references were made to a fight which had occurred several nights before the break in at Captain Bob's. Part of appellant's defense was that the reason he and his wife were driving east on U.S. Route 52 on the night he was arrested was because they had gone out to visit a cousin of appellant's wife and then had gone out to Turkey Lake to work out their problems. During cross-examination of appellant and his wife, the state inquired about the fight in great detail. Evidence that appellant had severely beaten his wife was adduced. Appellant argues that such evidence was unfairly prejudicial and should not have been permitted. Appellee contends that the evidence was relevant because it related to matters of credibility of appellant's wife--i.e., if she was afraid of her husband she might lie for him out of fear and since she sustained a concession as a result of the beating, her recollection of what occurred only four days after the concussion might be somewhat clouded.

Relevant evidence is that evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. In the case *sub judice*, the cross-examination did tend to attack appellant's wife's credibility for the reasons set forth, *supra*. Therefore, we conclude that it was relevant. However, even if relevant, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice . . ." Evid. R. 403(A). Thus, a trial court must weigh the relevancy against the unfair prejudice. In the case at bar, apparently the lower court found that the relevancy of the evidence adduced in cross-examination was not substantially outweighed by the unfair prejudice. Since the admission or exclusion of relevant evidence rests within the sound discretion of the trial court, *see State v. Sage* (1987), 31 Ohio St. 3d 173, to reverse the lower court we must find that it abused its discretion in making that determination. An abuse of discretion connotes more than an error of law or judgment. It instead necessitates a finding that the lower court's determination was unreasonable, arbitrary, or unconscionable. *See State v. Apanovitch* (1987), 33 Ohio St. 3d 19.

We hold that the lower court did not abuse its discretion by permitting the state to cross-examine appellant and his wife about the fight. We first note that the issue of the fight was first raised on direct examination; thus, cross-exami-

nation did not exceed the scope of direct examination. It is true that the relevancy of the cross-examination was attenuated and that the state questioned appellant and his wife about the fight longer than necessary. Nevertheless, we conclude that the unfair prejudice to appellant was not that great. The evidence tended to portray appellant as an individual with a violent temper. However, appellant was not on trial for crimes of violence but instead breaking and entering, which involves breaking into an unoccupied building, and attempted theft from an unoccupied building. Further, he was not on trial for a crime against his wife, the victim of his beating. While the evidence did portray appellant in a bad light, it was not such that there was "'danger that the facts offered may [have] unduly arouse[d] the jury's emotion or prejudice, hostility or sympathy.'" Gianelli, Ohio Evidence Manual (1982) 14, No.403.04(a) (citing McCormick on Evidence (2d Ed. 1972) 439.) Accordingly, because the relevancy was not *substantially* outweighed by unfair prejudice, appellant's sixth assignment of error is overruled.

For the aforementioned reasons, the judgment of the court below is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

---

[1] Appellant was represented by different counsel at trial.

[2] We further note that appellant asserts that where circumstantial evidence is used to convict a person, the evidence must be inconsistent with any reasonable theory of innocence. See *State v. Kulig* (1974), 37 Ohio St. 2d 157. Appellant argues that since it was unknown whether or not the employees of Captain Bob's left the merchandise where it was found, it would be just as reasonable to conclude that it was an employee rather than appellant who moved the merchandise. We note that Gaff in testified that his employees would not have left the items where they were found. This is a credibility question for the jury. If the jury believed Gaff in, it could conclude that the merchandise was not moved until after the store closed. Once that conclusion was made, the only other possibilities are that someone else entered the store before appellant and moved the beer and cigarettes to which there was no evidence or that appellant moved them without the intent to steal. These clearly are not reasonable theories of innocence. Accordingly, the mandates of *Kulig* were satisfied. See also *State v. Cousin* (1982), 5 Ohio App. 3d 32.

[3] The elements of theft and grand theft are identical. One can be convicted of grand theft if the value of the item[s] taken is greater than five thousand dollars but less than One

hundred thousand dollars or if the offender has twice before been convicted of a theft offense.

[4] Actually, this analysis was presented in the opinion of the court authored by Justice Stewart in a portion in which only Justice Relinquist concurred. However, later in *Florida v. Royer* (1983), 460 U.S. 491, a majority of the court adopted this approach. *See* 2 Lafave, Search and Seizure (1987) 338, Section 5.1(a).